NOT FOR PUBLICATION                                             (Document No. 8)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| LUCIAN DAVIS, | |
| Plaintiff, | Civil No. 12-2481 (RBK/AMD) |
| v. | **OPINION** |
| CAMDEN COUNTY BOARD OF SOCIAL SERVICES, and CORWIN CANDALARIO, et al. | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter arises out of Plaintiff Lucian Davis's ("Plaintiff") allegations of excessive force used against him by Camden County officials during a visit he made to the Camden County Board of Social Services in the City of Camden, New Jersey.  His Complaint asserts claims for both municipal and individual liability under 42 U.S.C. § 1983, as well as various state law causes of action.  Currently before the Court is Defendant Camden County Board of Social Services ("Board") and Defendant Officer Corwin Candalario's (collectively, "Defendants") motion to dismiss certain of Plaintiff's claims (Doc. No. 8).  For the reasons stated herein, the Court will grant in part and deny in part Defendants' motion.  It will grant the motion to dismiss the excessive force claim (Count I) against the Board, and will grant the motion to dismiss the state law claims (Counts IV and V) against Defendant Officer Candalario.  It will deny the motion to dismiss Plaintiff's municipal liability claim (Count III).  Finally, it will strike

Plaintiff's request for punitive damages against the Defendant Board, but not against Defendant Officer Candalario.

I.     FACTS AND PROCEDURAL BACKGROUND[1]

In April 2010, Plaintiff visited the Camden County Board of Social Services to obtain a housing referral. Compl. ¶ 18. As he sat in the waiting room, Defendant Officer Candalario and another officer, both employees of the Board, approached Plaintiff and ordered him to "shut up." *Id.* ¶¶ 19, 25. When Plaintiff did not heed this order, the officers grabbed Plaintiff and choked him until he lost consciousness. *Id.* ¶ 20. Plaintiff awoke to find that he was being dragged out of the waiting room while the officers kicked him. *Id.* ¶ 21. Two other officers present at the scene witnessed the altercation but took no action. *Id.* ¶ 27.

Plaintiff returned to the Social Services office the following day. Shortly thereafter, Defendant Candalario and the other officer who had assisted him the day before approached Plaintiff and demanded that he not press charges against either of them for the previous day's events. *Id.* ¶¶ 29-30. At the same time, one of these two officers produced a bullet, and, showing it to Plaintiff, warned him that the projectile "had his name on it." *Id.* ¶ 31. Another officer told him that a prison cell was going to become Plaintiff's tomb. *Id.* ¶ 32. Plaintiff suffered various physical and emotional injuries as a result.

Plaintiff filed suit in this Court on April 26, 2012. (Doc. No. 1). Count I of his Complaint seeks relief under 42 U.S.C. § 1983 for the use of excessive force by Defendant Officer Candalario, his fellow officer, and the Defendant Board. Count III is a claim for municipal liability under 1983. Counts IV and V are state law intentional tort claims directed at Defendant Candalario and other parties.

---

[1] When considering the sufficiency of the factual allegations in a plaintiff's complaint, the Court, for purposes of deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), assumes such allegations to be true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

In June, 2012, Defendant Candalario and the Defendant Board filed the instant motion to dismiss some of Plaintiff's claims.  Specifically, their motion seeks dismissal of Counts I and III against the Defendant Board, as well as Counts IV and V against Defendant Candalario.  It also asks the Court to strike Plaintiff's request for any punitive damages.  In his opposition brief to Defendants' motion, Plaintiff consented to dismissing Count One against the Defendant Board, all state law claims against Defendant Candalario, and his request for punitive damages against the Defendant Board.[2]  Pl.'s Opp. Br. 1-2.  Thus, the Court's only remaining task is to consider whether Plaintiff has stated a plausible section 1983 municipal liability claim against the Board.

## II.     DISCUSSION & ANALYSIS

### A.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[2] It is well established that a plaintiff asserting a claim for relief under 42 U.S.C. § 1982 may seek punitive damages against state officials in their individual capacity.  *Keenan v. City of Phila.*, 983 F.2d 459, 469-70 (3d Cir. 1992) ("Punitive damages in § 1983 cases are available where the defendants have acted with a reckless or callous disregard of, or indifference to, the rights and safety of others.") (internal quotations and citations omitted).  Thus, the Court will deny Defendants' motion to strike Plaintiff's request for punitive damages against Defendant Officer Candalario in his individual capacity.

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is possible rather than plausible. *Id.*

### B.   Municipal Liability under Section 1983

A plaintiff may not hold a municipal entity liable under 42 U.S.C. § 1983 on a theory of *respondeat superior*. *See Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Instead, a viable section 1983 municipal liability claim must include allegations that a government entity has adopted a particular policy or custom, "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," and that such policy or custom has been "the moving force" behind the deprivation of an individual's constitutional rights. *See id.* at 694. Municipal policy generally involves a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers"; municipal customs, however, may take less conspicuous form. *See Simmons v. City of Phila.*, 947 F.2d 1042, 1059 (3d Cir. 1991) (citing *Monell*, 436 U.S. at 690. A municipal custom, although lacking the formal approval of a policy, refers to those official

practices which are "so permanent and well settled" as to have the force of law." *Id.* (citing *Monell*, 436 U.S. at 691).

Under certain circumstances, a municipality's failure to properly train its employees and officers can amount to a "custom" that will trigger liability under section 1983. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). However, such liability is reserved for cases in which the failure to train evidences a "deliberate indifference" to the constitutional rights of that municipality's inhabitants. *Id.* at 389. It is not enough to allege simply that a training program exists and that it has proved to be inadequate. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Rather, the plaintiff's burden is to "identify a failure to provide specific training that has a causal nexus with his or her injuries and . . . demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz v. County of Bucks*, 125 F.3d 139, 144 (3d Cir. 1997). Deliberate indifference may be established when a policymaker has knowledge of a "pattern of similar constitutional violations by untrained employees" but takes no action to augment or alter the municipality's employee training programs accordingly. *See Lapella v. City of Atlantic City*, No. 10-2454, 2012 WL 2952411 at *7 (D.N.J. July 18, 2012) (citing *Connick v. Thompson*, --- U.S. ---, 131 S. Ct. 1350, 1360 (2011)).

While the Supreme Court originally fashioned the "deliberate indifference" doctrine in the context of a city's alleged failure to properly train its police officers, the Third Circuit has since adopted this standard in other policy and custom situations. *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996). In general, a municipality may be liable under section 1983 if it tolerates known illegal conduct by its employees. *Id.* In such circumstances, it can be said to have a custom that evidences deliberate indifference to the rights of its inhabitants if 1)

5

policymakers were aware that municipal employees had deprived others of certain constitutional rights; 2) it failed to take precautions against future violations; and 3) this failure led, at least in part, to the plaintiff's suffering the same deprivation of rights. *See id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)). Thus, in the context of a plaintiff who alleges that a municipal employee violated his constitutional rights through the use of excessive force, he may state a section 1983 claim against the municipality itself if he alleges that employees had used excessive force against individuals in the past, that the municipality was well aware of these occurrences, that the municipality failed to take action[3] to prevent future violations, and that this failure contributed in part to the plaintiff's being himself subjected to excessive force.

Turning the instant case, in support of his municipal liability claim against the Defendant Board, Plaintiff makes the following allegations:

> 1. [T]he [D]efendant [Board has] maintained for many years a . . . custom of condoning . . . [the practice] of subjecting poor and disenfranchised recipients of social services to excessive force . . . [by] security personnel. Compl. ¶ 50.
>
> 2. [The Board has] been aware of the[se] . . . practices for a substantial period of time . . ., [but has] failed to take steps to terminate said . . . practices. [Specifically, the Board has] not effectively trained police officers with regard to the proper constitutional and statutory limits in the exercise of their authority. *Id.* ¶ 52.
>
> 3. [The Board has also] fail[ed] to properly . . . supervise and discipline its police officers and detectives . . . regarding the appropriate procedures for protecting the constitutional rights of individuals .. . to be free from excessive force. *Id.* ¶ 51.
>
> 4. As a direct and proximate result of [these failures to act], Plaintiff suffered injuries [by being subjected to excessive force]. *See id.* ¶ 54.

---

[3] Examples of failures to take action include a failure to properly investigate excessive force claims, *e.g., Franks v. Cape May County*, No. 07-6005, 2010 WL 3614193 at *11 (D.N.J. Sept. 8, 2010), and/or a failure to meaningfully discipline the employees responsible, *e.g. Merman v. City of Camden*, 824 F. Supp. 2d 581, 588-90 (D.N.J. 2010).

While these allegations are admittedly thin, the Court finds that they are just enough to state a plausible claim for municipal liability against the Defendant Board under section 1983. First, Plaintiff has stated a failure to train claim. He alleges that the Defendant Board failed to adequately train its security personnel about the constitutional and statutory limits on a state official's use of force on individuals, including the proper procedures for how to prevent instances of excessive force. *Id.* ¶¶ 51-52. Because he likewise suffered injuries from the alleged use of excessive force by Camden County officials, Plaintiff has "identif[ied] a failure to provide specific training that has a causal nexus with his . . . injuries." *See Reitz*, 125 F.3d at 144. Further, Plaintiff alleges that the Defendant Board was aware that its security personnel had subjected individuals to excessive force in the past, but it took no action to curtail this practice by augmenting its officer training program. *See* Compl. ¶ 52. Thus, Plaintiff has alleged deliberate indifference on the part of the Defendant Board because it had knowledge of a "pattern of similar violations" by officers who had not been properly trained in the use of force, but did not take action to provide such training. *See Lapella*, 2012 WL 2952411 at *7. Plaintiff has therefore properly alleged the specific training deficiency, causation, and deliberate indifference elements of a section 1983 failure to train municipal liability claim.[4] *See Malignaggi v. County of Gloucester*, 855 F. Supp. 74, 77 (D.N.J. 1994) (citing *City of Canton*, 489 U.S. at 391) ("To sustain an inadequate training theory, plaintiff must (1) identify the deficiency; (2) prove that the deficiency cause the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency reflected deliberate indifference on the part of the municipality"). While Plaintiff

---

[4] In the alternative, the Court notes that these same allegations are sufficient to establish the requirements for municipal liability under the *Beck* and *Bielevicz* cases. That is, the allegations establish the existence of past related constitutional violations, knowledge by the Defendant Board of such violations, a failure to take action to prevent future violations, and a causal link to Plaintiff's alleged injuries. *See Beck*, 89 F.3d at 972.

may well have a difficult task ahead of him to adduce competent evidence in support of this claim, he has alleged enough facts in his Complaint to obtain discovery on the matter.

## III. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss certain counts of Plaintiff's Complaint will be granted in part and denied in part. It will grant the motion to dismiss the Defendant Board from Count I of the Complaint, and will grant the motion to dismiss Counts IV and V against Defendant Officer Candalario. It will deny the motion to dismiss Count III against the Defendant Board. Finally, it will grant the request to strike Plaintiff's prayer for punitive damages against the Defendant Board, but will deny the request with respect to Defendant Officer Candalario. The Court will issue an appropriate order.


Dated:   3/18/2013                                                     /s/ Robert B. Kugler      _
                                                                                  ROBERT B. KUGLER
                                                                                 United States District Judge