NOT FOR PUBLICATION (Doc. No. 46)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| LUCIAN DAVIS, | |
| Plaintiff, | |
| v. | Civil No. 12-2481 (RBK/KMW) |
| CAMDEN COUNTY BOARD OF SOCIAL SERVICES et al., | **OPINION** |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Defendants Camden County Board of Social Services and Officer Corwin Candalario (collectively "Defendants"), for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Doc. No. 46). The subject of this motion is Plaintiff Lucian Davis' Complaint, alleging claims under 42 U.S.C. § 1983 against Defendants for violations of his constitutional rights. For the reasons stated herein, Defendants' motion will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

This matter arises out of a lawsuit filed by Plaintiff Lucian Davis ("Plaintiff") against Defendants after Defendants allegedly violated his rights under the Fourth and Fourteenth Amendments to the Constitution, and committed various torts under New Jersey law.

On April 27, 2010, Plaintiff visited the Camden County Board of Social Services ("the Board") office for a housing referral. (Defs.' Statement of Undisputed Material Facts ("Defs.'

SMF") ¶ 8.)[1]  While sitting in the waiting area, Plaintiff was speaking to a woman seated next to him.  (Id. ¶¶ 9, 16.)  At the time there were other individuals in the waiting area, including Officer Corwin Candalario ("Candalario").  (Id. ¶¶ 10, 15.)  Candalario was employed as a security officer for the Board, and had been since 1993.  (Id. ¶ 11; Ex. D to Defs.' Br., Deposition Testimony of Corwin Candalario ("Candalario Dep.") at 8:20-9:8; see id. at 20:5-13 (testifying he works directly for the Board, as opposed to the private security officers that may also work in the building).)

At some point, while Plaintiff was in the waiting area talking to the woman next to him, Candalario approached Plaintiff and asked him to quiet down.  (Defs.' SMF ¶¶ 10, 16.)  Plaintiff admits that he refused to stop talking, despite Candalario's repeated requests.  (Id. ¶ 13.)  Candalario told Plaintiff to "shut up," to which Plaintiff told Candalario to also "shut up."  (Id. ¶ 12; Pl.'s Resp. ¶ 14; Ex. C to Def.'s Br., Deposition Testimony of Lucian Davis ("Davis Dep.") at 63:19-64:3.)  The remaining details of the incident are significantly disputed by the parties.

---

[1] Plaintiff admits in part and denies in part this fact in his Response to Defendants' Statement of Material Facts ("Pl.'s Resp."). (Pl.'s Resp. ¶ 8.)  Plaintiff admits that he was at the Social Services office for the stated purposes on the specified date, but denies that the incident which occurred at that location, and which is the subject of the present case, is "alleged." (Id.)  Yet, no finder of fact has ruled in favor of Plaintiff at this time, so that is exactly what the incident is—alleged.  Moreover, Plaintiff repeatedly "admits" certain facts in his response, but proceeds to expand on those facts with multiple alleged and disputed facts and legal arguments.  (See Pl.'s Resp. ¶¶ 9-10, 12, 15, 17, 19, 24-26, 28.)  The purpose of the responsive statement required by Local Rule 56.1(a) is not for Plaintiff to litigate his arguments further, but rather it is to identify undisputed facts that are admitted, and if certain facts are denied, cite to the record accordingly.  Loc. R. 56.1(a) expressly prohibits moving or nonmoving parties from including legal arguments or conclusions of law in their Rule 56.1 statements.

Additionally, Defendants submitted a Statement of Material Facts in Dispute with their original motion. (See Def.'s Statement of Material Facts in Dispute.)  As per Loc. R. 56.1(a), the movant is not required to submit a statement of disputed material facts.  The purpose of allowing the non-moving party to submit a supplemental statement of disputed material facts is to "substantiate the factual basis for opposition." Loc. R. 56.1(a).  If the non-moving party does provide such a statement, then the moving party is to respond to the supplemental statement of disputed material facts in its reply papers.  The Court notes that any actually disputed material facts Defendants submitted with their original motion are necessarily disputed, and cannot be the basis for granting summary judgment.  To the extent that Defendants used such a statement as an opportunity to present facts, not addressed by Plaintiff, with citations to the record, and which provide additional support for their claim, the Court will credit those facts to Defendant.

2

Defendants allege that when Candalario saw Plaintiff seated in the waiting area, Plaintiff was upset and getting loud, to the point that people in the waiting room began complaining about him and his language. (Candalario Dep. at 50:1-51:15.) Candalario told Plaintiff he could not continue speaking in that manner, and that if the disruptive behavior continued, Plaintiff would be asked to leave. (Id. at 51:17-52:2.) Plaintiff responded by saying, "No one's going to throw me out. I'm staying here. I got to get my referral. Fuck that," and the patrons around him in the waiting area became more upset with his language and use of racial slurs. (Id. at 52:4-13.) At this point, Candalario approached to within 15 feet of Plaintiff and asked him to leave. (Id. at 56:18-20.) Plaintiff then got up, without hesitation, and began to walk out. (Id. at 57:1-3.) Candalario proceeded to call the Camden City Police over his radio, and the officer who received his call told Candalario that he would meet Candalario and Plaintiff in the lobby as Plaintiff was escorted out. (Id. at 57:3-9.) Once Candalario had escorted Plaintiff to the officer in the lobby, he returned to his post in the Social Services office. (Id. at 60:16-24.) According to Candalario, at no time did he ever touch Plaintiff. (Id. at 58:21-25.) Nor did Candalario ever see Plaintiff after this encounter. (Id. at 61:19-24.)

Plaintiff tells a very different version of what happened that day in the Social Services office. According to Plaintiff, at some point while he was talking to the woman seated next to him in the waiting room, Candalario told him to be quiet and Plaintiff kept talking. (Davis Dep. at 61:10-13.) Candalario then told Plaintiff to "shut up," to which Plaintiff replied, "You shut up." (Id. at 61:13-17.) Plaintiff claims he was just having a friendly conversation with the woman seated next to him. (Id. at 62:2-63:12.) At no point did Candalario order Plaintiff to leave the waiting room. (Id. at 71:4-13.) Instead, Candalario approached Plaintiff as he continued talking to the woman and suddenly grabbed Plaintiff around the neck. (Id. at 66:8-16.) Candalario put Plaintiff in a headlock, at which point Plaintiff apparently passed out. (Id. at

3

69:15-70:10 ("I remember his arm going around my neck, and like I said, the next thing I know, I was halfway up the escalator.").) When Plaintiff regained consciousness, Candalario was carrying him up the escalator. (Id. at 66:16-20.) Once upstairs, Plaintiff was questioned by a police officer about what happened, and Plaintiff tried to explain that he had been assaulted. (Id. at 66:21-14.) Plaintiff testified that he was then escorted to the door by both Candalario and the officer, where he waited until the officer returned with his housing referral. (Id. at 67:17-68:5.)

After he left the Board, Plaintiff walked to the police administration building, where he attempted to press charges. (Id. at 99:13-100:3.) He was told he needed to go to the hospital first, so he asked the woman working at the police administration building to call him an ambulance. She did, and an ambulance eventually picked Plaintiff up and took him to Cooper Hospital. (Id. at 100:3-9.) At the hospital Plaintiff complained of neck and back problems, as well as difficulty swallowing, though he had no visible bruising, cuts or any other outward signs of injury. (Id. at 101:13-102:5; see Ex. B to Pl.'s Opp'n, Emergency Room Records ("ER Records").) As a result of his visit to the Emergency Room Plaintiff was given ibuprofen and released. (Davis Dep. at 101:16-18; ER Records.)

Plaintiff claims he returned to the Board the next work day and encountered Candalario working in a security booth, on the corner outside the Social Services and City Hall buildings, as Plaintiff was walking from the Board to City Hall to press charges. (Davis Dep. at 114:1-4; 116:8-10, 120:21-121:19.) According to Plaintiff, when Candalario saw him, Candalario pulled a bullet out and told Plaintiff, "If anything happens, this has your name on it." (Id. at 121:20-122:24.)

However, according to Defendants, Candalario had no access to the security booth where the alleged second incident occurred because that booth is staffed by another security firm all together. (Candalario Dep. at 68:5-18.) He testified that his security duties had nothing to do

4

with the security booth in question, and related only to inside the building located at 600 Market Street in Camden, New Jersey. (Id. at 69:17-70:3.) Candalario also claims he does not own a firearm or bullets, nor has he ever carried a gun as part of his job. (Id. at 13:20-14:10.)

Plaintiff commenced the present action by filing a Complaint on April 26, 2012. (Compl.) Plaintiff's Complaint alleged violations of 42 U.S.C. § 1983 for excessive force and bystander liability, and state law claims for assault and battery and intentional infliction of emotional distress against Candalario. (Compl. Counts I, II, IV, V.) Against the Board, Plaintiff alleged § 1983 excessive force and Monell claims. (Compl. Counts I, III.) On March 18, 2013 this Court dismissed Count I as to the Board, Counts IV and V as to the Candalario, and struck Plaintiff's request for punitive damages against the Board (Doc. No. 16). Defendants filed this motion for summary judgment on March 27, 2014, asking the Court to dismiss Plaintiff's remaining claims against the Board and Candalario.

The subject of the current motion is Plaintiffs' § 1983 claims for excessive force (Count I) and bystander liability (Count II) against Candalario, and the § 1983 Monell claim (Count III) against the Board. Plaintiff does not oppose Defendants' motion with respect to Counts II and III (see Pl.'s Resp. ¶ 28; Pl.'s Opp'n at 6),[2] so the Court will grant summary judgment as to those claims. Plaintiff does argue, however, that there are material facts in dispute that preclude the Court from granting summary judgment as to Count I, his excessive force claim against Candalario.

## II.     LEGAL STANDARD

---

[2] Plaintiff failed to number the pages in his brief in opposition to Defendants' motion for summary judgment. As such, the Court will consider the page titled "Legal Argument" in Doc. No. 48 to be Page 1 for purposes of citations to "Pl.'s Opp'n," and will reference the pages thereafter accordingly.

The Court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (quoting First Nat'l Bank of Az. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. Anderson, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. Id. at 255; Matsushita, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. Anderson, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which the jury might return a verdict in his favor. Id. at 257. Even where the movant will bear the burden of proof at trial, the movant's burden can be be discharged by showing that "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

**III.    DISCUSSION**

6

As noted above, Plaintiff's remaining claim against Candalario is for excessive force. Plaintiff claims that Candalario "intentionally and maliciously [subjected] plaintiff to excessive force, without any cause or justification and thereby deprived the plaintiff of his rights, privileges and immunities under … the Fourth and Fourteenth Amendments … to be free from excessive force." (Compl. ¶ 38.) With respect to this claim, Defendants contend that Plaintiff has failed to put forth sufficient evidence supporting his claim, and also suggest that Candalario is entitled to qualified immunity. (Def.'s Br. at 4.)[3]

### A.    Excessive Force

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).[4] Claims that officials used excessive force to seize a suspect are analyzed under the Fourth Amendment objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 388 (1989). To state a claim for excessive force under the Fourth Amendment, a plaintiff must show that a "seizure" occurred and that it was unreasonable. Curley v. Klem, 499 F.3d 199, 203 (3d Cir. 2007). The test of Fourth Amendment reasonableness of force used during seizure is whether, under the totality of the circumstances, a government official's actions are objectively reasonable

---

[3] Defendants also did not number the pages of their supporting brief. As such, the Court will use the page numbers that correspond with the appropriate ECF page numbers. Defendants' Brief is Doc. No. 46-1 on ECF.

[4] The Court notes that neither party disputes Candalario was employed by Camden County at the time of the alleged incident and that he was acting under the color of state law. Because the conduct complained of appears to have occurred while Candalario was acting within his power as a security guard employed by Camden County, the Court accepts for purposes of this decision that he was acting under the color of state law. See West, 487 U.S. at 49-50 ("State employment is generally sufficient to render the defendant a state actor. It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.") (internal quotations and citations omitted); see also Brentwood Acad. v. Tn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 n.2 (2001) ("If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action 'under color of state law' for § 1983 purposes. Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982).")

7

in light of facts and circumstances confronting him, without regard to his underlying intent or motivations.  Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004); Graham, 490 U.S. at 397.  An excessive force claim must be evaluated from the perspective of a reasonable officer or official on the scene, rather than with the 20/20 vision of hindsight.  Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004); Lamont v. New Jersey, 637 F.3d 177, 183 (3d Cir. 2011) ("Monday morning quarterbacking is not allowed").

In assessing whether the use of force was objectively reasonable, courts consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Rivas, 365 F.3d at 198 (quotation marks and citation omitted).  Courts may also consider "the possibility that the persons subject to the [government] action are violent or dangerous . . . the possibility that the suspect may be armed, and the number of persons with whom the [government officials] must contend at one time."  Kopec, 361 F.3d at 777.

While reasonableness is often a question for the jury, summary judgment in favor of defendants is appropriate "if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances."  Id. (quoting Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999)).

Here, the parties seem to dispute whether a seizure ever occurred, though their arguments are not a model of clarity.[5]  Defendants argue that Candalario never touched Plaintiff during the alleged incident on April 27.  (Defs.' Br. at 6.)  Plaintiff contends he was seized when Candalario

---

[5] While Defendants generally argue that the facts do not support Plaintiff's version of the events, including Plaintiff's claim that Candalario put him in a headlock, they make this argument in the portion of their brief ostensibly dealing with the reasonableness of Candalario's actions.  (See Defs.' Br. at 4-6.)

grabbed Plaintiff around the neck and dragged him up the escalator. (Pl.'s Opp'n at 3.) The alleged facts as presented are not complicated, and the Court need not conduct a lengthy analysis of whether Candalario "by means of physical force or show of authority, has in some way restrained the liberty of a citizen," Terry v. Ohio, 392 U.S. 1, 20 n.16 (1968), or whether there was "a governmental termination of freedom of movement through means intentionally applied." Brower v. Cnty. Of Inyo, 489 U.S. 593, 597 (1989). When the Court construes the facts in favor of the Plaintiff, his testimony suggests that Candalario physically grabbed him and dragged him out of the Social Services office.[6] Though Defendants dispute the plausibility of Plaintiff's testimony, fact and credibility determinations are for the jury, and Plaintiff's evidence is to be believed and ambiguities construed in his favor. Anderson, 477 U.S. at 255.[7] Because Plaintiff has pointed to some evidence on the record, namely his deposition testimony, which indicates that a material fact pertaining to whether he was seized is in dispute, the Court will proceed to analyze the reasonableness of the alleged seizure.

With respect to the reasonability of the seizure, Defendants note Candalario's testimony stating that Plaintiff was upset, speaking loudly and using profane language while in the Social Services office waiting area. (Defs.' Br. at 5.) Both parties agree that when Candalario told Plaintiff to "shut up," Plaintiff responded in kind. (Defs.' SMF ¶ 12; Pl.'s Resp. ¶ 14; Davis

---

[6] While Plaintiff does not dispute that Candalario does not own a gun or bullets, or carry a gun as part of his job, (See Pl.'s Resp. ¶ 19.), and Defendants have pointed to testimony suggesting Candalario never worked in the security booth where this second incident was purported to happen, the Court notes that this second incident does not pertain to Plaintiff's excessive force claim. Plaintiff does not claim that his freedom of movement was restricted, nor does he claim that this event prevented him from pressing charges. In his Complaint these allegations related to assault and intentional infliction of emotional distress claims, both of which were dismissed against Candalario. (See Compl. ¶¶ 30-34.) As such, the Court declines to consider these facts or circumstances as bearing on Plaintiff's remaining § 1983 claim against Candalario.

[7] The Court acknowledges that Plaintiff has not identified any of the alleged witnesses to the incident, or pointed to any other support for his allegations other than his own deposition testimony. (See Defs.' Br. at 8.) Despite Plaintiff's seemingly threadbare evidence, however, it is not for the court to assess on a motion for summary judgment whether his testimony is "believable" for purposes of determining whether Plaintiff has supported his factual allegations through references to the record. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587.

Dep. at 63:19-64:3.) Defendants claim that when Plaintiff was told that if he did not quiet down he would be asked to leave, Plaintiff responded, "No one's going to throw me out. I'm staying here. I got to get my referral. Fuck that." (Candalario Dep. at 52:4-6.) Defendants claim Candalario only instructed Plaintiff to leave, escorted him out, and then turned Plaintiff over to a police officer outside the Social Service office. (Defs.' Br. at 6.)

On the other hand, Plaintiff contends that, aside from his refusal to stop talking, he was "committing no crime" and that he was "simply talking to the girl sitting next to him." (Pl.'s Resp. at 4.) Plaintiff argues that telling a security guard to "shut up" does not constitute a threat, and use of force in response to such words was unreasonable under the circumstances. (Id.) Finally, Plaintiff states that he was not resisting arrest when Candalario allegedly put him in a headlock. Nor had Candalario even asked him to leave the waiting area. (Id. at 4-5.) Based on these contentions, detailed in Plaintiff's deposition testimony, Plaintiff argues there are disputed issues of fact pertaining to whether Candalario's use of force was reasonable under the circumstances.

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that a reasonable security official under the circumstances would not have used the alleged force on Plaintiff. Based on the undisputed facts and Plaintiff's disputed alleged facts, at most Plaintiff was being verbally belligerent when he told Candalario to "shut up" and refused to stop talking. There is no indication that Plaintiff was a danger to himself or others, that he was resisting arrest, that he had a weapon, that Candalario needed to contend with multiple suspects, or that Plaintiff had even committed a crime. See Kopec, 361 F.3d at 777; Rivas, 365 F.3d at 198. The Court finds that an objectively reasonable security official under these circumstances would not have suddenly placed a verbally rude individual into a headlock, with enough force to render that person unconscious. See id.; see also Watson v. Haverford Twp. Police Dep't, No. 10-6731,

2012 WL 1900629, at *13-14 (E.D. Pa. May 25, 2012) (holding that based on plaintiff's version of the events, i.e., that the officer put plaintiff "face down on the table and yanked her hands behind her back," plaintiff purportedly told the officer "that he was hurting her, but he did not reply," two officers picked plaintiff up under her arms and dragged her down the driveway to their police car with her feet barely touching the ground, and then screamed in plaintiff's ear and pushed her in the police car, a jury could find that the defendant officers used considerable force in arresting plaintiff); French v. Squire-Tibbs, No. 11-1009, 2013 WL 3283869, at *4 (D.N.J. June 26, 2013) (where there was "no indication, by Plaintiff's account, that he 'actively resist[ed]' the officers when they entered the holding cell to subdue him . . . there was little 'possibility that [he] may [have been] armed,'" and there "was only one potentially dangerous person with whom the officers had to contend" a factfinder could conclude that "the use of a billy club to the face with sufficient force to break a person's orbital bone would constitute excessive force in violation of the Fourth Amendment").

For this reason, the Court declines to grant summary judgment on the basis of Defendants' argument that Plaintiff is unable to support the elements of his § 1983 claim. The Court now turns to Defendants' argument that Candalario is entitled to qualified immunity.

### B.     Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Ray v. Twp. of Warren, 626 F.3d 170, 173 (3d Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223 (2009)). If a reasonable official is not on notice that his or her conduct under the circumstances is clearly unlawful, then application of qualified immunity is appropriate. Id. "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." Id.

The Supreme Court has established a two-part analysis to determine if qualified immunity is appropriate: (1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Pearson, 555 U.S. at 232. Courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. Id. at 236. The right is "clearly established" only if the right was sufficiently clear such that a reasonable official would understand that what he is doing violates that right. Ray, 626 F.3d at 174. Even if the officer made a mistake about the legal constraints on his actions, as long as the mistake was reasonable, qualified immunity still applies. Id. To avoid hindsight, the officer's actions are judged from the perspective of a reasonable officer under the circumstances. Id.

The Court has already established that a jury could find, based on the facts presented, that Candalario violated the constitutional right of Plaintiff to be free from excessive force. Based on the foregoing, and viewing the facts in the light most favorable to Plaintiff, the Court concludes that it cannot be said as a matter of law that a reasonable security official would not have known that putting an individual in a headlock, with sufficient force to cause that person to lose consciousness, in an attempt to quiet that person down, was a violation of that person's Fourth Amendment rights. See, e.g., Middleton v. City of Ocean City, No. 12-0605, 2014 WL 2931046, at *11 (D.N.J. June 30, 2014) (holding that an officer should clearly know his use of force was unreasonable where "Plaintiff was fully cooperating with [the officer], informed [the officer] that he was hurting her in the course of her handcuffing and asked to stop, [the officer] testified that he did not have to contend with any other individuals at the time of Plaintiff's arrest, and the offenses at issue were relatively minor, non-violent charges.") (internal citations omitted); Williams v. Twp. of W. Deptford, No. 05-1805, 2008 WL 1809134, at *5 (D.N.J. Apr. 22, 2008)

("This Court concludes that it would have been clear to a reasonable police officer that three male officers lifting a woman in the air and throwing her on the ground with force sufficient to break a femur bone is unreasonable where that individual is alone, unarmed, outnumbered by police eight to one."); Klemash v. Monroe Twp., No. 07-4190, 2010 WL 455263, at *8 (D.N.J. Feb. 4, 2010) (noting that where defendant was told repeatedly that plaintiff was unable to move his arm behind his back, and the offense was minor, it was clear that a reasonable officer would have known his conduct was unlawful under the circumstances).

The Court finds that Candalario is not entitled to qualified immunity based on the facts presented by the parties. Accordingly, the Court will deny Defendants' motion for summary judgment on Plaintiff's excessive force claims against Candalario.[8]

## IV. CONCLUSION

For the reasons expressed above, Defendants' motion for summary judgment will be **GRANTED IN PART** and **DENIED IN PART**. An appropriate Order shall enter.

Dated: 10/14/2014                                  s/ Robert B. Kugler
                                                   ROBERT B. KUGLER
                                                   United States District Judge

---

[8] "Qualified immunity may still be available at trial in light of the jury's findings of facts." Klemash, 2010 WL 455263, at *8 n.3 (citing Halpin v. Gibson, No. 05-2088, 2009 WL 3271590, at *2-3 (D.N.J. Oct. 9, 2009) (considering a post-trial motion for qualified immunity)).